# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAKE CHARLES DIVISION

CHRISTOPHER DOYLE                     CIVIL ACTION NO. 06-0923

VS.                                   SECTION P

LYNN COOPER, WARDEN                   JUDGE MINALDI

                                      MAGISTRATE JUDGE WILSON

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of *habeas corpus* (28 U.S.C. §2254) filed by *pro se* petitioner Christopher Doyle on June 5, 2006.  Doyle is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Avoyelles Corrections Center, Cottonport, Louisiana where he is serving the thirty year sentence imposed following his January 2003 conviction on charges of attempted murder in the Thirty-Third Judicial District Court, Allen Parish.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.  For the following reasons it is recommended that the petition be **DENIED** and **DISMISSED WITH PREJUDICE**.

### *Statement of the Case*

On January 17, 2003 petitioner was found guilty as charged of attempted second degree murder. [doc. 1-1, p. 1; doc. 1-3, p. 5] Petitioner's Motions for New Trial, Post-Verdict Judgment of Acquittal, and Modification of Verdict [doc. 4, Exhibits, pp. 13-21] were filed and disposed of prior to sentencing. On February 6, 2003 petitioner was sentenced to serve 30 years at hard labor without benefit of parole. His Motion to Reconsider Sentence was denied. [doc. 1-3, p. 5]

Petitioner moved for an appeal and in due course, court- appointed appellate counsel filed an appeal arguing two assignments of error – (1) sufficiency of the evidence and (2) excessiveness of sentence. [doc. 4, Exhibits, pp. 23-39]  On November 5, 2003 petitioner's judgment of conviction and sentence were affirmed in an unpublished opinion of the Third Circuit Court of Appeals. See *State of Louisiana v. Christopher Doyle*, 2003-00702 (La. App. 3 Cir. 11/5/2003), 857 So.2d 41. [See also, slip opinion, doc. 4, Exhibits, pp. 40-52] Petitioner did not seek further direct review by filing an application for writs in the Louisiana Supreme Court. [doc. 4-1, p. 3, paragraph 4]

Petitioner filed a *pro se* application for post-conviction relief on May 27, 2004. [doc. 4, Exhibits, pp. 56-78; doc. 15-2 Exhibits A and B] Petitioner argued the following claims for relief,

Claim One – "Although petitioner was advised of his *Miranda* /Constitutional rights, he contends that the way the interview was conducted and the fact that he was not free to leave created a coercive atmosphere denying petitioner's U.S. Constitutional Rights, 4, 5, 6 and 14." [doc. 4, Exhibits, pp. 67-73; doc. 15-2, Exhibit B, p. 12]

Claim Two – "To prove attempt[ed] second degree murder of Kenneth Cloud, the State was required to establish that petitioner had specific intent to kill and that he committed an overt act in furtherance of that [goal]." [doc. 4, Exhibits, pp. 73-75; doc. 15-2, Exhibit B, p. 17]

Claim Three – "Petitioner was intoxicated and drugged, and this condition was involuntary, and the circumstances indicated this condition is the direct cause of the commission of the crime, petitioner should have been exempt from any criminal responsibility." [doc. 4, Exhibits, pp. 75-76; doc. 15-2, Exhibit B, p. 19]

Claim Four – "Petitioner was denied effective assistance of counsel when trial counsel failed to request a jury instruction on the defense of involuntary intoxication, and the trial court err[ed] when giving the jury instruction." [doc. 4, Exhibits, pp. 76-78; doc. 15-2, Exhibit B, p. 20]

On January 24, 2005 petitioner's application for post-conviction relief was denied by the

trial court without a hearing. [doc. 4-1, p. 6] The trial court's reasons for judgment were succinct:

> Petitioner's application does not state a claim on which relief can be granted. The facts stated in the attached memorandum were presented and considered in pre-trial motions and during his trial by the jury. Many of them are inconsistent with the facts presented at trail. [doc. 15-2 Exhibit A, p. 7]

On February 11, 2005 petitioner submitted an Application for Writs to the Third Circuit Court of Appeals. [doc. 4, Exhibits, pp. 81-98] Petitioner argued the following:

> I. The trial court erred when it found petitioner's application to be without a claim that relief can be granted.
>
> II. The trial court erred when it analyzed petitioner's application for post-conviction relief under the standard used for pre-trial motions.
>
> III. The trial court erred by applying an incorrect evaluation of the facts. [doc. 4, Exhibits, p. 82]

Petitioner also attached a copy of the Memorandum in Support of his Application for Post-Conviction Relief which had been filed in the district court. [*id*., pp. 84-98]

The writ application was assigned the Third Circuit's Docket Number 05-00169-KH. [doc. 4, Exhibits, p. 79] On March 22, 2005, the Third Circuit denied writs finding, "... no error in the trial court's ruling..." *State of Louisiana v. Christopher Doyle*, KH 05-00169 (La. App. 3 Cir. 3/22/2005) (unpublished). [*id*., p. 80; see also doc. 15-2, Exhibit C, p. 23]

On April 15, 2005, petitioner submitted a writ application to the Louisiana Supreme Court. The matter was assigned docket number 2005-KH-1411. [doc. 4, Exhibits, p. 99] Petitioner's Supreme Court writ application argued that the lower courts "... erroneously interpreted and applied the constitution and laws of this state, as well as the constitution and laws of [the] United States..." and that the decisions of the lower courts "... conflicts with a decision of

3

other courts of appeal, this court, or the Supreme Court of the United States on the same legal issue." [doc. 4, Exhibits, pp. 103-104] Again, petitioner attached a copy of the Memorandum in Support of his Application for Post-Conviction Relief to his writ application. [*id*., pp. 107-121] On February 17, 2006, the Louisiana Supreme Court denied writs without comment. See *State of Louisiana ex rel. Christopher Doyle v. State of Louisiana*, 2005-1411 (La. 2/17/2006), 924 So.2d 1004. [See also doc. 4, Exhibits, p. 100]

Petitioner signed his federal *habeas corpus* petition on May 31, 2006; it was received and filed on June 5. The precise contours of petitioner's claims were difficult to decipher because he did not set forth specifically numbered claims for relief.  Therefore, the undersigned specifically directed petitioner to "... amend his pleadings to set forth <u>specific numbered claims for relief</u>." [doc. 3, emphasis supplied]

On September 12, 2006 petitioner filed a Motion to Amend [doc. 4-1] and an appendix of Exhibits. With regard to the directive to provide <u>specific numbered claims for relief</u>, petitioner ignored this order and referred the court to his previously filed memorandum. [doc. 4-1, p. 2] Nevertheless, a comparison of the memorandum in support of petitioner's *habeas corpus* petition with the memorandum in support of petitioner's application for post-conviction relief reveals that the documents are virtually identical.  Based on that analysis, the undersigned concluded that the instant *habeas corpus* petition raises claims identical to the claims raised in petitioner's application for post-conviction relief. [doc. 5] The undersigned was notified of this conclusion and voiced no objections. Therefore, the undersigned has concluded that petitioner seeks relief based on the following claims for relief which were argued in petitioner's application for post-conviction relief filed in the district court and thereafter raised in petitioner's writ applications in the Third Circuit Court of Appeals and the Louisiana Supreme Court:

Claim One – "Although petitioner was advised of his *Miranda* /Constitutional rights, he contends that the way the interview was conducted and the fact that he was not free to leave created a coercive atmosphere denying petitioner's U.S. Constitutional Rights, 4, 5, 6 and 14." [doc. 4, Exhibits, pp. 67-73; doc. 15-2, Exhibit B, p. 12]

Claim Two – "To prove attempt[ed] second degree murder of Kenneth Cloud, the State was required to establish that petitioner had specific intent to kill and that he committed an overt act in furtherance of that [goal]." [doc. 4, Exhibits, pp. 73-75; doc. 15-2, Exhibit B, p. 17]

Claim Three – "Petitioner was intoxicated and drugged, and this condition was involuntary, and the circumstances indicated this condition is the direct cause of the commission of the crime, petitioner should have been exempt from any criminal responsibility." [doc. 4, Exhibits, pp. 75-76; doc. 15-2, Exhibit B, p. 19]

Claim Four – "Petitioner was denied effective assistance of counsel when trial counsel failed to request a jury instruction on the defense of involuntary intoxication, and the trial court err[ed] when giving the jury instruction." [doc. 4, Exhibits, pp. 76-78; doc. 15-2, Exhibit B, p. 20]

The undersigned has previously paraphrased these claims as follows: (1) insufficiency of evidence; (2) ineffective assistance of counsel; (3) illegal arrest and (4) involuntary confession. [doc. 5]

### *Law and Analysis*

Plaintiff's claims were adjudicated on the merits.  As shown above, Louisiana's Thirty-Third Judicial District Court determined that petitioner's application for post-conviction relief failed to state a claim for which relief could be granted. That court also found that the facts alleged by the petitioner were presented, considered, and rejected either by the court or the jury. Finally, the trial court found that many of the facts alleged by the petitioner were inconsistent with the facts presented at trial. [doc. 15-2, Exhibit A, p. 7]

Thereafter, the Third Circuit rejected petitioner's claims finding "no error in the trial court's ruling." *State of Louisiana v. Christopher Doyle*, KH- 05-00169 (La. App. 3 Cir.

3/22/2005) (unpublished). [doc. 15-2, Exhibit C, p. 23]

Finally, petitioner's claims were considered and rejected by the Louisiana Supreme Court which simply denied petitioner's writ application without further elaboration. *State ex rel. Christopher Doyle v. State of Louisiana*,  2005-1411 (La. 2/17/2006), 924 So.2d 1004. [See also doc. 4, Exhibits, p. 100; doc. 15-2, Exhibit D, p. 24]

A *habeas* petitioner whose claims were adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d).

Therefore, with respect to the claims presented, petitioner is not entitled to relief unless he demonstrates that the state court's  adjudication of his claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   The  state court's factual determinations are presumed correct; but can be rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Pure questions of law and mixed questions of law and fact are reviewed under the standard identified by §2254 (d)(1); pure questions of fact are reviewed under the standards provided by §2254 (d)(2). *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.2001).  In either case, "[t]he standard is one of objective reasonableness." *Montoya v. Johnson*, 226 F.3d 399, 403-404 (5th Cir.2000) (emphasis supplied) (quoting *Williams v. Taylor*,  529 U.S. 362,  412-13, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring)). Additionally, the federal court restricts its review to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir.2001).

A state court's decision is contrary to clearly established federal law "if the state court

6

arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413.  On the other hand, a decision is an "unreasonable application" of federal law "if the state court identifies the correct governing legal principle ... but unreasonably applies that principle to the facts of the prisoner's case." *Id.* Unreasonable means more than merely incorrect. *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir.2001).  *Habeas corpus* relief may not be granted unless "the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.' " *Id.*  The state courts' findings of fact are presumed correct, unless rebutted with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir.2002) overruled on other grounds by *Tennard v. Dretke*, 542 U.S. 274, 124 S.Ct. 2562, 159 L.Ed.2d 384 (2004).

As will be shown hereinafter, these principals, when applied to petitioner's claims, demand dismissal of his *habeas corpus* petition.  As shown above, petitioner's arguments on his various claims for relief are identical to the arguments set forth in his Application for Post-Conviction Relief filed in the Thirty-Third Judicial District Court. [Compare doc. 15-2, Exhibit B, pp. 9-22 to doc. 1-3 and doc. 4] The only difference is that petitioner neglected to provide specific headings for each of his four claims for relief and, with regard to this first claim for relief, petitioner provided a heading unrelated to the argument which follows. Therefore, for the sake of clarity, the undersigned has utilized the headings provided by petitioner in his Application for Post-Conviction Relief.

> **Claim One – Although petitioner was advised of his *Miranda*//Constitutional rights, he contends that the way the interview was conducted and the fact that he was not free to leave created a coercive atmosphere denying petitioner's U.S. Constitutional Rights, 4, 5, 6 and 14.  [compare doc. 1-3, pp.**

**9-16 with doc. 15-2, Exhibit B, pp. 12-17]**

"[T]he Due Process Clause of the Fourteenth Amendment [prohibits] states from securing criminal convictions through the use of involuntary confessions resulting from coercive police conduct." *Self v. Collins*, 973 F.2d 1198, 1205 (5th Cir.1992)(citing *Miller v. Fenton*, 474 U.S. 104, 109, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985)).  "In addition to the due process prohibition against the use of coerced confessions, the now-familiar procedural safeguards established in [*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ] also protect an accused's Fifth Amendment privilege against self-incrimination during custodial interrogation." *Id.* "[W]hile the ultimate issue of voluntariness is a legal question requiring independent factual determination, subsidiary factual questions ... are entitled to the § 2254(d) presumption." *Id.* at 1204 (internal quotation marks and citation omitted). See *Gachot v. Stalder*, 298 F.3d 414, 418 (5th Cir. 2002).

"A confession is voluntary if, under the totality of the circumstances, the statement is the product of the accused's free and rational choice." *United States v. Broussard*, 80 F.3d 1025, 1033 (5th Cir.1996). "[T]he relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception ...." *Oregon v. Elstad*, 470 U.S. 298, 305 (1985). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

"Cases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare." *Berkemer v. McCarty*, 468 U.S. 420, 433 n .20 (1984); see also

*Dickerson v. United States*, 530 U.S. 428, 444 (2000). Similarly, "*Miranda* protects defendants against government coercion leading them to surrender rights protected by the Fifth Amendment; it goes no further than that." *Connelly*, 479 U.S. at 170. "[B]oth the characteristics of the accused and the details of the interrogation" should be considered in determining voluntariness. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973).

Petitioner apparently did not file a pre-trial motion to suppress the confession. However, during the trial, petitioner indicated a desire to "traverse" the confession and as a result, a hearing on the voluntariness of petitioner's confession was held outside of the presence of the jury. [doc. 12-2, Exhibits, Vol. 6, p. 1031][1]

Allen Parish Sheriff's Office Deputy Greg Quirk testified that he advised petitioner of his *Miranda* rights during the early morning hours of June 18, 2001. He testified that although petitioner appeared to be tired, nervous, and upset, he did not appear to be intoxicated. [*id*., p.

---

[1] Petitioner gave two separate statements to Deputy Greg Quirk. The first statement was given at 6:30 a.m. on June 18, 2001 and was introduced as State's Exhibit 17 at trial. [see doc. 12-2, Vol. 5, pp. 800-806] In that first statement petitioner denied that he shot the victim. In this statement he claimed that he and the victim had been watching a video-tape at the victim's mobile home. Petitioner claimed that the victim "... took his clothes off and got under the covers and was laying on the pillow watching TV. Then I had to use the bathroom and I went outside. I went to, behind the truck over here on the side, by the driver door to use the bathroom. And then that's when I heard the two shots. Then after I got outside, right when I started using the bathroom, I heard shots...." [doc. 12-2, Vol. 5, p. 800] He also claimed in that statement that he only drank about "five or six sips" of an alcoholic beverage that evening and that he had consumed no narcotics. [*id*., p. 805]

The second statement was given to Deputy Quirk at 5:40 p.m. on June 18 and was introduced as State's Exhibit 21 at trial. [doc. 12-2, Vol. 5, pp. 810-818] Therein petitioner indicated that he understood his rights; that he agreed to waive his rights and answer questions; and that this decision was being done "... on [petitioner's] own voluntarily [sic] free will..." and that the statement was not the result of any promises, threats, pressure, or coercion. [*id*., p. 810] In this second statement petitioner stated that he had consumed an unspecified amount of alcohol prior to the shooting. He then stated that at some point in the evening, the victim made sexual advances toward him. Petitioner stated that he ran outside to the truck, retrieved his .22 caliber rifle and some bullets, pulled an ice chest by the window to the victim's bedroom, observed the victim laying on his back and then fired two shots. Petitioner at first denied that he intended to kill the victim but admitted, "... I shot him because I wanted to hurt him, because he was trying to hurt me..." Then petitioner admitted that he shot "... by [the victim's] head and around in here somewhere right there..." Then, concluded the statement with three admissions that he shot at the victim intending to kill him. [*id*., pp. 813-814] He admitted that the rifle was a single shot bolt-action rifle and that he shot, reloaded, then shot again. [*id*., p. 816]

1034]   Nor did he appear to be under the influence of drugs. [*id.*, p. 1035] Quirk testified that he

arrived at the hospital and commenced his investigation at 2:48 a.m. He initially advised

petitioner of his *Miranda* rights while at the hospital and had petitioner execute a waiver of rights

form prior to their departure to the Allen Parish Sheriff's Office. [*id.* 1036[2]] Quirk stated that the

waiver of rights form was executed at 4:49 a.m., however, he did not commence his interrogation

of the petitioner until 6:30 a.m. [*id.*, p. 1037][3] Quirk testified that upon their arrival at the

Sheriff's Office, he accompanied petitioner to the detective's office; at no time was petitioner

placed in a jail cell. [*id.*] Quirk testified that he did not suggest to the petitioner how he should

answer his questions and that he did not threaten the witness. [*id.*, p. 1038] Quirk testified that he

believed that petitioner understood his rights and that his statement to Quirk was free and

voluntary. [*id.*, p. 1039]

Under cross-examination, Quirk again maintained that petitioner was not intoxicated;

nevertheless, Quirk admitted that he suggested to petitioner that, after having provided his initial

statement,  he should get some sleep in anticipation of a polygraph test which had been discussed

by Quirk, petitioner, and petitioner's father. [*id.*, p. 1044]

On re-direct Quirk again reiterated that petitioner was not intoxicated. [*id.*, p. 1046] He

testified that petitioner was not under arrest at the time he gave his statement to the officer and

---

[2] See State Exhibit 16, doc. 12-2, Exhibits, Vol. 4, p. 799]

[3] Petitioner executed three waiver or rights forms.  The first, introduced as State Exhibit 19, was executed
on June 18, 2001 at 2:50 a.m. in the presence of Patrolman Alvin Smith. [doc. 12-2, Vol. 5, p. 808]The second,
introduced as State's Exhibit 16, was signed by petitioner at the Oakdale Community Hospital at 4:49 a.m. [doc. 12-
2, Vol. 4, p. 799] The third, introduced as State Exhibit 20 was executed at 5:22 p.m. on June 18, 2001. [doc. 12-2,
Vol. 5, p. 809] Exhibits 16 and 20 contained a waiver of rights signed by petitioner which read, "I have been read
this statement of my rights and I understand what my rights are. I am willing to make a statement and answer
questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have
been made to me and no pressure or coercion of any kind has been used against me." [id.]

that he was not placed under arrest until sometime on the evening of June 18. [*id.*][4]

Petitioner then testified.  He testified that he was "highly intoxicated and drugged" on date in question both when the offense was committed and when he was interrogated by the Sheriff's Deputies. He testified that he had consumed "... close to a fifth ..." of whiskey, some beer, and  Xanax. [*id.* pp. 1050-51]   He testified that he was intoxicated and drugged when he arrived at the hospital with the victim [*id.*, p. 1053] and that he had no recollection of having made the statements he made to the investigators. [*id.*, pp. 1054-55]

However, on cross-examination he admitted that there were no other policemen in the office when he gave his statements to Deputy Quirk.  He admitted that the statements he gave to Quirk were the truth as he recalled it at the time of making the statements. [*id.*, p. 1055] Petitioner did not deny having made the statements in question; he did not deny that the police had read him his *Miranda* rights prior to interrogating him; he did not deny having signed the waiver of rights forms. [*id.*, p. 1056] He admitted that Quirk read him his rights; he admitted that when asked if he understood those rights, he answered yes and signed the waiver of rights form indicating that fact.  He then, however, testified that he did not understand his rights. [*id.*, p. 1060-61] Nevertheless, when asked if his statements were voluntary, he said, "Yes, sir." [*id.*, pp. 1061-62]

At the conclusion of the hearing, petitioner's attorney argued, "... we move ... that all of the statements be suppressed by reason of the fact that the first questioning or the later

---

[4] At the conclusion of this hearing, the jury was returned to the courtroom and at some point Deputy Quirk again testified that he read the petitioner his *Miranda* rights and that the petitioner indicated that he understood his rights but was willing to waive his rights and provide a statement. [*id.*, pp. 1084-1086] Under cross-examination Quirk again testified that petitioner did not appear to be intoxicated or drugged during the time he was interrogated. [*id.*, p. 1087] He testified that after having obtained a statement in the morning, he allowed petitioner to sleep and then obtained a second statement in the evening. [*id.*, pp. 1087-89] He testified that he again advised petitioner of his *Miranda* rights and that petitioner again signed a waiver form indicating that he understood his rights and was willing to make another statement. [*id.*, p. 1089-90]

questioning, even the statements themselves were under when he did not have the mental condition. That is exactly – I pressed because the officer later put him to bed. He put him to bed for eight hours because he was in no condition to give a statement. The same officer is saying 'Yeah, but he was competent to give me a statement.' You can't put them together. Either he was time to go to bed or he was not." [sic] [*id*., p. 1073] [5]

At the conclusion of the hearing the court ruled, "... that the statement was voluntarily given after advising defendant of all of his constitutional rights." [*id*.]

The trial court implicitly determined that petitioner's confession was voluntary and was not the result of threats, promises, or coercion. The same judge examined petitioner's Application for Post-Conviction Relief and determined that, with regard to the claim concerning the confession, that petitioner's application did not state a claim on which relief could be granted. The judge also determined that the facts stated in the petitioner's memorandum were presented and considered in pre-trial motions and during the trial. [doc. 15-2 Exhibit A, p. 7]

With regard to the Application for Post-Conviction Relief, the state judge again implicitly determined that petitioner's confessions were free and voluntary and were not the result of coercion. The trial court's findings that the police did not engage in coercive tactics and that petitioner's confession was free and voluntary is a factual question which the undersigned must presume to be correct. See *Carter v. Johnson*, 131 F.3d 452, 462 (5th Cir.1997); 28 U.S.C. § 2254(e)(1).

In order to succeed, petitioner must show that the state court's  adjudication of his claims

---

[5] Counsel's argument is illogical. Petitioner's first statement was not inculpatory. His second statement was. The fact that the officers permitted petitioner an opportunity to sleep several hours before he made his inculpatory statement tends to negate his theory that he was intoxicated when he confessed. Further, that fact also tends to negate the theory advanced herein that the officers coerced his confession and took advantage of his intoxicated state.

12

"(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   As shown above, the  state court's factual determinations are presumed correct; but can be rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1). Petitioner has not carried his burden of proof with respect to Claim One. He has not shown that the state court's decision on the merits involved an unreasonable application of Federal law; nor has he shown that the state court's decision was based on an unreasonable determination of the facts.  To the contrary, the foregoing review of the trial transcript clearly establishes that the state court's denial of Claim One was based on a reasonable determination of the facts in light of the evidence presented at trial.  Claim One is without merit.

> **Claim Two – "To prove attempt[ed] second degree murder of Kenneth Cloud, the State was required to establish that petitioner had specific intent to kill and that he committed an overt act in furtherance of that [goal]." [doc. 4, Exhibits, pp. 73-75; doc. 15-2, Exhibit B, p. 17]**

Petitioner argues that there was insufficient evidence to establish that he had specific intent to kill the victim. Petitioner correctly seeks to apply the clearly established *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) standard for determining the constitutional sufficiency of the evidence on federal *habeas corpus* review.  The critical inquiry under Jackson is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. Further, "a federal *habeas corpus* court faced with a record of historical facts that supports conflicting inferences must presume ... that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*

13

at 326. The analysis is applied with "explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n. 16.

Specific criminal intent is defined under Louisiana law as  "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." See La. R.S.14:10(1).  Under Louisiana law, specific intent is a question of fact which may be inferred from the circumstances and actions of the defendant. *State v. Seals*, 95-0305 (La. 11/25/96), 684 So.2d 368, 373.  For the purposes of second degree murder, specific intent may be inferred from the pointing of a gun at close range and pulling the trigger. *Seals*, 684 So.2d at 373; *State v. Brown*, 03-897, p. 22 (La. 4/12/2005), 907 so.2d 1, 18; *State v. Roberts*, 2006-765 (La. App. 3 Cir. 1/17/2007), 947 So.2d 208, 213.

The evidence of specific intent was overwhelming. Petitioner himself admitted to firing two shots toward the victim's  head and admitted that he intended to kill his victim.[6]  After viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319.  Petitioner's second claim is clearly without merit.

**Claim Three – "Petitioner was intoxicated and drugged, and this condition was involuntary, and the circumstances indicated this condition is the direct cause of the commission of the crime, petitioner should have been exempt from any criminal responsibility." [doc. 4, Exhibits, pp. 75-76; doc. 15-2, Exhibit B, p. 19**]

---

[6] As shown above, petitioner provided a full confession. [See doc. 12-2, Vol. 5, pp. 810-818] In that confession petitioner stated that at some point in the evening, the victim made sexual advances toward him. Petitioner stated that he ran outside to the truck, retrieved his .22 caliber rifle and some bullets, pulled an ice chest by the window to the victim's bedroom, observed the victim laying on his back and then fired two shots. Petitioner at first denied that he intended to kill the victim but admitted, "... I shot him because I wanted to hurt him, because he was trying to hurt me..." Then petitioner admitted that he shot "... by [the victim's] head and around in here somewhere right there..."  Then, concluded the statement with three admissions that he shot at the victim intending to kill him. [*id.*, pp. 813-814] He admitted that the rifle was a single shot bolt-action rifle and that he shot, reloaded, then shot again. [*id.*, p. 816]

In his third claim for relief petitioner argues that he should be exempt from criminal responsibility because he was <u>involuntarily</u> intoxicated and drugged.  In support of this claim petitioner sites La. R.S.14:15 and the Louisiana jurisprudence interpretative thereof.  At the outset, it must be noted that federal *habeas corpus* relief is only available "... on the ground that [the petitioner] is in custody <u>in violation of the Constitution or laws or treaties of the United States</u>..." 28 U.S.C. §2254(a).   Petitioner's third claim for relief suggests only that his custody is violative of the law of Louisiana. As such, petitioner fails to raise a federal constitutional issue and thus fails to state a claim for which relief may be granted.  This third claim for relief is subject to dismissal on that basis.

Nevertheless, to the extent that petitioner might imply that his conviction was  violative of the United States Constitution's guarantee of Due Process, his claim would fare no better.  Under Louisiana law, the defense of involuntary intoxication is defined by La. R.S. 14:15 which provides in part, "The fact of an intoxicated or drugged condition of the offender at the time of the commission of the crime is immaterial, except, ... [w]here the production of the intoxicated or drugged condition has been involuntary, and the circumstances indicate this condition is the direct cause of the commission of the crime, the offender is exempt from criminal responsibility..."

As noted above, petitioner testified at trial. He testified that he was a substance abuser since the age of 12. [doc. 12-2, Vol. 6, p. 1188] He testified that the victim supplied him with alcohol and drugs stating that the victim " ...did give us <u>what we wanted</u>..." [*id*., 1191] He testified that on the date of the offense, he drank whiskey and took Xanax, but he did not indicate that his alcohol and drug use on that day was *involuntary*. [*id*., pp. 1201-1203; 1213] Petitioner's expert witness, Dr. Rathmel, testified concerning the history supplied by the petitioner; she did

not indicate that petitioner's intoxication on the date of the offense was involuntary. [*id*., pp. 1109-1111]    The State's expert, Dr. Post, likewise testified to the history supplied by petitioner.  Petitioner likewise did not tell Dr. Post that his intoxication was involuntary. [*id*., pp.1129-30]

Finally, the statements given by petitioner to the police authorities strongly suggest that petitioner was not intoxicated, voluntarily or otherwise. See petitioner's statement at doc. 12-2, Vol. 5, p. 805 wherein he admitted that he only drank about "five or six sips" of an alcoholic beverage that evening and that he had consumed no narcotics.

In short, a review of the record reveals that there was no evidence of involuntary intoxication.[7] Again, with regard to this claim, the trial court, when addressing an identical claim raised in petitioner's application for post-conviction relief noted, "Petitioner's application does not state a claim on which relief can be granted. The facts stated in the attached memorandum were presented and considered in pre-trial motions and during his trial by the jury. Many of them are inconsistent with the facts presented at trail."  [doc. 15-2 Exhibit A, p. 7] As shown above, a

---

[7] Petitioner suggests that his intoxication was involuntary because he was a minor, that the victim knew he was a minor and yet purchased alcohol and drugs for him knowing that as a minor he could not have procured these intoxicants on his own. The record establishes that petitioner was one-week short of his 18th birthday on the date of the offense. [doc. 12-2, Vol. 6, p. 1220] Nevertheless, petitioner's theory does not establish that his intoxication was involuntary. No Louisiana cases support this theory. In the Official Reporter's Comments associated with La. R.S.14:15, the defense of involuntary intoxication is explained as follows, "Where the offender is <u>forced or deceived</u> into the intoxicated condition, so that it may be said to be involuntary, he is excused. Specific instances of this would include cases of actual <u>compulsion</u>, drunkenness or a drugged condition through the <u>stratagem</u> of another, taking the liquor or drug after a physician's prescription, or taking the drug by <u>mistake</u>. Clark and Marshall, *Law of Crimes* (4th ed. 1940) 134, § 93." Being under the age of minority, in and of itself, does not establish the voluntariness or not, of one's intoxication.

Furthermore, involuntary intoxication can be a defense under Louisiana law <u>only if that condition is the direct cause of the commission of the crime</u>. *State v. Keating*, 2000-51 (La. App. 5 Cir. 10/18/2000), 772 So.2d 740, 744. Petitioner maintained throughout the trial that the direct cause of the offense was the victim's sexual advances. [see especially the testimony of Dr. Rathmel at doc. 12-2, Vol. 6, p. 1110, "He thought the main was going to homosexually attack him when he exposed himself and put on a pornographic video. And that he shot himself and he thought that he was defending himself against a homosexual attack." Therefore, even if petitioner's intoxication was involuntary, it would not have sufficed to exempt him from criminal responsibility.

review of the trial record reveals no evidence of involuntary intoxication. Petitioner has not shown that the trial court's finding of fact was unreasonable.

> **Claim Four – "Petitioner was denied effective assistance of counsel when trial counsel failed to request a jury instruction on the defense of involuntary intoxication, and the trial court err[ed] when giving the jury instruction."** [doc. 4, Exhibits, pp. 76-78; doc. 15-2, Exhibit B, p. 20]

Finally, petitioner suggests that his attorney was ineffective for failing to request a jury charge on involuntary intoxication and that the trial court erred when it instructed the jury on voluntary intoxication but not on involuntary intoxication.   In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  The *habeas* petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. See *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong, petitioner must demonstrate that his counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. See *Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir.2001), *cert. denied*, 534 U.S. 1163, 122 S.Ct. 1175, 152 L.Ed.2d 118 (2002). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir.1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See *Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.' " *Lockhart v. Fretwell*, 506 U.S. 364, 371, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See *Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir.1986); *Matheson v. King*, 751 F.2d 1432, 1441 (5th

17

Cir.1985).  Trial counsel is not required to make futile motions or objections; his failure to do so does not amount to deficient performance. Compare,  *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir.1990).

As shown above, there was no evidence adduced at trial to establish that petitioner's intoxication was involuntary.  La. C.Cr.P. art. 807 provides in part, "defendant shall have the right ... to submit to the court special written charges for the jury... A requested special charge shall be given by the court ... <u>if it is wholly correct and pertinent</u>."  Petitioner's trial attorney cannot be faulted for failing to request a jury charge that was not pertinent to the proceedings.

For the same reason, the trial court did not err by failing to give a charge that was not requested and was unsupported by the evidence.

Petitioner's claims are without merit and his petition should be denied and dismissed with prejudice.

**ACCORDINGLY,**

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE**  because petitioner's claims are  without merit.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A  party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P.**

6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir.  1996).**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, July 16, 2007.

ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE

19